**FILED**

**SEP 12 2013**

Clerk, U.S. District Court
District Of Montana
Missoula

**TIMOTHY J. RACICOT**
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
105 E. Pine Street
Missoula, MT 59802
Phone: (406) 542-8851
FAX: (406) 542-1476
Email: Tim.Racicot2@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| UNITED STATES OF AMERICA, | CR 13-43-M-DLC |
|---|---|
| Plaintiff, | **INDICTMENT** |
| vs. | WIRE FRAUD (Counts I-XXXII)<br>Title 18 U.S.C. § 1343 |
| STEVEN VINCENT SANN, | (Penalty: 20 years imprisonment, $250,000 fine, and three years supervised release) |
| Defendant. | |

|  | **MONEY LAUNDERING**<br>**(Counts XXXIII-XXXIV)**<br>Title 18 U.S.C. § 1957<br>(Penalty: Ten years imprisonment, $250,000 fine, and three years supervised release)<br><br>**CONSPIRACY**<br>**(Count XXXV)**<br>Title 18 U.S.C. § 371<br>(Penalty: Five years imprisonment, $250,000 fine, and three years supervised release)<br><br>**FORFEITURE**<br>Title 18 U.S.C. § 981(a)(1)(C),<br>Title 28 U.S.C. § 2461(c), and<br>Title 18 U.S.C. § 982(a)(1) |
|---|---|

THE GRAND JURY CHARGES:

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Emerica Media Corporation ("Emerica") was a Nevada corporation with a physical address in Henderson, Nevada, a principal place of business at Lolo, Montana, and a mailing address at Missoula, Montana. Emerica was incorporated on or about July 29, 2008, and continued to do business through in or about December 2011. Emerica purported to be in the business of billing land-line telephone customers for a stand-alone voice mail and fax service, called ConnectMeVoice.

The defendant, STEVEN VINCENT SANN, was the president, secretary, treasurer, and director of Emerica.

2.  Techmax Solutions, Inc. ("Techmax") was a Nevada corporation. Techmax's physical address in Henderson, Nevada was the same address listed by Emerica. Techmax also had a post office box in Missoula, Montana. Techmax was incorporated on or about August 14, 2007, and continued to do business through in or about December 2011. Techmax purported to be in the business of billing land-line telephone customers for voice mail and fax services. P.T., a friend of the defendant, STEVEN VINCENT SANN, was the president, secretary, treasurer, and director of Techmax.

3.  FoneRight, Inc. ("FoneRight") was a Nevada corporation. FoneRight's physical address in Henderson, Nevada was the same address listed by Emerica and Techmax. FoneRight also had a post office box in Missoula, Montana. FoneRight was incorporated on or about June 18, 2007, and continued to do business through in or about December 2011. FoneRight purported to be in the business of billing land-line telephone customers for voice mail and fax services. G.L., a

brother-in-law of the defendant, STEVEN VINCENT SANN, was the president, secretary, treasurer, and director of FoneRight.

4. Voice Mail Professionals, Inc. ("Voice Mail Professionals") was a Nevada corporation. Voice Mail Professionals' physical address in Henderson, Nevada was the same address listed by Emerica, Techmax, and FoneRight. Voice Mail Professionals also had a post office box in Missoula, Montana. Voice Mail Professionals was incorporated on or about May 18, 2006, and continued to do business through in or about December 2011. Voice Mail Professionals purported to be in the business of billing land-line telephone customers for voice mail and fax services. T.L., the wife of the defendant, STEVEN VINCENT SANN, was the president, secretary, treasurer, and director of Voice Mail Professionals.

5. SecurAtDat, Inc. ("SecurAtDat") was a Nevada corporation. SecurAtDat's physical address in Henderson, Nevada was the same address listed by Emerica, Techmax, FoneRight, and Voice Mail Professionals. SecurAtDat also had a post office box in Missoula, Montana. SecurAtDat was incorporated on or about July 29, 2008, and continued to do business through in or about December 2011.

4

SecurAtDat purported to be in the business of billing land-line telephone customers for voice mail and fax services. N.S., the son of the defendant, STEVEN VINCENT SANN, was the president, secretary, treasurer, and director of SecurAtDat.

6. HearYou2, Inc. ("HearYou2") was a Nevada corporation. HearYou2's physical address in Henderson, Nevada was the same address listed by Emerica, Techmax, FoneRight, Voice Mail Professionals, and SecurAtDat. HearYou2 also had a post office box in Missoula, Montana. HearYou2 was incorporated on or about July 30, 2008, and continued to do business through in or about December 2011. HearYou2 purported to be in the business of billing land-line telephone customers for voice mail and fax services. B.M., the niece of the defendant, STEVEN VINCENT SANN, was the president, secretary, treasurer, and director of HearYou2.

7. The defendant, STEVEN VINCENT SANN, was an undisclosed owner, operator, and principal of Techmax, FoneRight, Voice Mail Professionals, SecurAtDat, and HearYou2, in addition to being the president, secretary, treasurer, and director of Emerica (collectively, the "Sann companies").

5

## LOCAL EXCHANGE CARRIER BILLING PROCESS

At all times relevant to this Indictment:

8. The Sann companies billed consumers through the consumers' local telephone companies in a practice known as Local Exchange Carrier ("LEC") billing. LEC billing allowed authorized service providers — such as the Sann companies — to bill consumers for telecommunication-related services, as well as internet and other services, through their local telephone companies, or LECs. The LEC received a fee from the service provider for allowing it to use LEC billing.

9. Billing aggregators were independent companies that had separate contractual agreements with the LECs and the service providers. Billing aggregators were assigned Carrier Identification Codes ("CICs") by the LECs that allowed them to access the LEC's billing system on behalf of approved service providers. Billing aggregators submitted sub-CIC applications to the LECs on behalf of each service provider who wanted to use LEC billing. The billing aggregators used identification information provided to them by the

service providers — including the company's name, address, principals, and LEC billing history — to complete the sub-CIC applications.

10. The LECs selected which service providers to approve for LEC billing based on their sub-CIC applications. Approved service providers were authorized to bill consumers through the billing aggregators's CIC. An approved service provider became a Sub-CIC entity of the billing aggregator and paid a fee to the billing aggregator for the use of its CIC.

11. Billing aggregators managed billing for their service provider clients. The billing aggregator submitted the approved service provider charges to the LEC and the LEC paid the service provider through the billing aggregator when the LEC consumer paid his/her phone bill.

## COUNTS I-XXXII
## WIRE FRAUD

12. Paragraphs 1 through 11 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

13. Beginning in or about March 2009, and continuing until in or about December 2011, at Missoula and Lolo, in the State and

7

District of Montana, and elsewhere, the defendant, STEVEN VINCENT SANN, devised and executed a scheme to defraud, and for obtaining money by means of materially false and fraudulent pretenses, representations, promises, and omissions, and for the purpose of executing such scheme to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain writings.

## PURPOSE OF THE SCHEME AND ARTIFICE

14. It was the purpose of the scheme to defraud for the defendant, STEVEN VINCENT SANN, to unlawfully enrich himself by obtaining money from LECs, billing aggregators, and consumers by making materially false representations, and omitting and concealing material facts concerning, among other things, consumer complaints and his interest in and control of the Sann companies.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

15. It was the business practice of the Sann companies to collect money from consumers by arranging for charges to be placed upon the consumers' telephone bills. In order to bill consumers, the Sann companies submitted electronic records to billing aggregators, including

Transaction Clearing. The billing aggregators submitted the electronic records to LECs, such as AT&T and Verizon. The electronic records purported to contain information about consumers who wanted to purchase voice mail and fax service, called ConnectMeVoice, from the Sann companies. Because of their status as consumers' local telephone companies, the LECs were able to place those charges on consumers' monthly telephone bills.

16. Due to the controversy surrounding the LECs' placement of charges on their customers' monthly telephone bills, the LECs and the billing aggregators established complaint thresholds and required service providers like the Sann companies to report the number of complaints received each month. What qualified as a complaint was defined both in contracts between the LECs and the billing aggregators and in contracts and correspondence between the billings aggregators and the service providers. If service providers exceeded the complaint threshold in a given month, they could be placed on "action plans" or their ability to engage in LEC billing could be terminated.

17. To fraudulently induce others to pay money to the Sann companies, the defendant, STEVEN VINCENT SANN, made and

9

caused others to make materially false statements and concealed and omitted material facts, including the following:

    a.    The number of complaints received from customers each month from February 2010 through November 2011; and

    b.    His interest in and control of the Sann companies.

## USE OF THE WIRES

18. On or about the dates listed in the table below, at Missoula and Lolo, in the State and District of Montana, the defendant, STEVEN VINCENT SANN, for the purpose of executing the aforementioned material scheme to defraud, and for obtaining money by means of material false and fraudulent pretenses and representations, did knowingly cause to be transmitted in interstate commerce wire communications as set forth below, in violation of 18 U.S.C. § 1343.

| Count | Date | Transaction |
| --- | --- | --- |
| I | 3/2/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for February 2010 |
| II | 4/5/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for March 2010 |

| | | |
|---|---|---|
| III | 5/5/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for April 2010 |
| IV | 6/3/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for May 2010 |
| V | 7/6/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for June 2010 |
| VI | 8/2/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for July 2010 |
| VII | 9/1/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for August 2010 |
| VIII | 10/5/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for September 2010 |
| IX | 11/1/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for October 2010 |
| X | 12/1/2010 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for November 2010 |
| XI | 1/4/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for December 2010 |
| XII | 2/2/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for January 2011 |

| | | |
|---|---|---|
| XIII | 3/3/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for February 2011 |
| XIV | 4/4/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for March 2011 |
| XV | 5/2/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for April 2011 |
| XVI | 6/1/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for May 2011 |
| XVII | 7/5/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for June 2011 |
| XVIII | 8/1/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for July 2011 |
| XIX | 9/6/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for August 2011 |
| XX | 10/6/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for September 2011 |
| XXI | 11/3/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for October 2011 |
| XXII | 12/5/2011 | Email from Emerica in Montana to Transaction Clearing in Texas reporting zero complaints for November 2011 |

| XXIII | 6/23/2010 | Techmax submission to Transaction Clearing to begin billing consumer J.L. |
| XXIV | 7/13/2010 | SecureAtDat submission to Transaction Clearing to begin billing consumer C.B. |
| XXV | 7/25/2010 | FoneRight submission to Transaction Clearing to begin billing consumer J.B. |
| XXVI | 8/13/2010 | Techmax submission to Transaction Clearing to begin billing consumer B.H. |
| XXVII | 8/18/2010 | Techmax submission to Transaction Clearing to begin billing consumer S.L. |
| XXVIII | 9/14/2010 | Voicemail Professionals submission to Transaction Clearing to begin billing consumer E.H. |
| XXIX | 9/15/2010 | FoneRight submission to Transaction Clearing to begin billings consumer B.H. |
| XXX | 10/13/2010 | Techmax submission to Transaction Clearing to begin billing consumer D.K. |
| XXXI | 11/17/2010 | FoneRight submission to Transaction Clearing to begin billing consumer P.O. |
| XXXII | 12/15/2010 | SecureAtDat submission to Transaction Clearing to begin billing consumer P.C. |

## COUNTS XXXIII-XXXIV
## MONEY LAUNDERING

19. Paragraphs 1 through 18 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

20. On or about the dates listed in the table below, at Missoula, in the State and District of Montana, the defendant, STEVEN

13

VINCENT SANN, knowingly engaged in a monetary transaction by, through, or to a financial institution, namely US Bank, in and affecting interstate commerce, involving criminally derived property of a value greater than $10,000, said property having in fact been derived from a specified unlawful activity, namely wire fraud, as set forth below:

| Count | Date | Transaction |
| --- | --- | --- |
| XXXIII | 11/4/2010 | $400,000 transfer from a US Bank account (account number ending in 5789) to a Charles Schwab and Company investment account (account number ending in 9521) |
| XXXIV | 4/4/2011 | $100,000 transfer from a US Bank account (account number ending in 5789) to a Charles Schwab and Company investment account (account number ending in 9521) |

in violation of 18 U.S.C. § 1957.

## COUNT XXXV
## CONSPIRACY

21. Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

22. Beginning in or about March 2009, and continuing until in or about December 2011, at Missoula and Lolo, in the State and District of Montana, and elsewhere, the defendant, STEVEN VINCENT

SANN, with others both known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree to commit an offense or offenses against the laws of the United States, that is wire fraud in violation of 18 U.S.C. § 1343.

## OVERT ACTS

23. In furtherance of the conspiracy and to effect its object, the conspirators committed numerous overt acts in the District of Montana and elsewhere, including, but not limited to:

    a. directing Emerica employees and contractors to transmit the emails referenced above in Counts I-XXII, reporting that the Sann companies received zero complaints every month from February 2010 through November 2011, in order to conceal accurate complaint information from the billing aggregator; and

    b. soliciting friends and relatives of the defendant, STEVEN VINCENT SANN, to serve as officers of the Sann companies, in order to conceal Sann's ownership and control of those entities from the billings aggregators;

all in violation of 18 U.S.C. § 371.

## FIRST FORFEITURE ALLEGATION

24. Upon conviction of the wire fraud offenses set forth in Counts I-XXXII of this Indictment, the defendant, STEVEN VINCENT SANN, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

25. If any of the property that constitutes or is derived from the proceeds traceable to the offenses set forth in Counts I-XXXII:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

## SECOND FORFEITURE ALLEGATION

26. Upon conviction of the money laundering offenses set forth in Counts XXXIII-XXXIV of this Indictment, the defendant, STEVEN VINCENT SANN, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all right, title, and interest in property, real and personal, involved in said violations, or any property traceable to such property.

27. If any of the property involved in or traceable to the offenses set forth in Counts XXXIII-XXXIV:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL.

_____
FOREPERSON

_____
MICHAEL W. COTTER
United States Attorney
Attorney for Plaintiff

_____
KRIS A. McLEAN
Criminal Chief Assistant U.S. Attorney
Attorney for Plaintiff

WARRANT_____
BAIL_____
CRM/SUM √ Return: 10/8/13 @ 1:30 p.m. - JCL

18