**TIMOTHY J. RACICOT**
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
105 E. Pine, 2d Floor
Missoula, MT 59802
Phone:   (406) 542-8851
FAX:     (406) 542-1476
Email:   Tim.Racicot2@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**STEVEN VINCENT SANN,**<br><br>Defendant. | CR 13-43-M-DLC<br><br>**OFFER OF PROOF IN SUPPORT OF GUILTY PLEAS** |

Defendant Steven Vincent Sann has filed a plea agreement that contemplates his pleas of guilty to Counts XIII (13) and XXXIV (34) of the Indictment, which charge wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1957.   He will also admit the Second Forfeiture Allegation and agrees to forfeit $500,000 to the United States.   Sann's pleas of guilty will be conditioned on the Court's acceptance of the plea agreement, which

1

is entered pursuant to Rule 11(c)(1)(A), (B), and (C), *Federal Rules of Criminal Procedure*.

The United States presented all formal plea offers to Sann in writing. The plea agreement entered into by the parties and filed with the Court represents, in the government's view, the most favorable offer extended to Sann. *See Missouri v. Frye*, 132 S.Ct. 1399 (2012).

**Elements.** In order to prove the case against Sann at trial, the United States would have to prove the following elements beyond a reasonable doubt.

## Count XIII

First, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, wire, radio, or television communication in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

**Count XXXIV**

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value of greater than $10,000;

Fourth, the property was, in fact, derived from wire fraud; and

Fifth, the transaction occurred in the United States.

**Second Forfeiture Allegation**

The defendant acknowledges and agrees that the United States is entitled to forfeit any property, real or personal, involved in the offense charged in Count XXXIV, as well as substitute assets in accordance with 21 U.S.C. § 853(p). The parties agree that the allegation will be satisfied in this case by the forfeiture of $500,000, which represents the property involved in the money laundering charges contained in the Indictment.

**Proof.**   If called upon to prove this case at trial, and to provide a factual basis for Sann's pleas, the United States would present the following evidence.

During the time period referenced in the Indictment, Sann managed several companies (the "Sann Companies") that were engaged in the business of marketing a stand-alone voice mail and fax service, using a practice known as Local

Exchange Carrier ("LEC") billing to collect for the service's charges.   Sann was the president, secretary, treasurer, and director of one of those companies – Emerica Media Corporation ("Emerica").   The Sann Companies were incorporated in Nevada and most of them designated one person – either a relative or friend of Sann's – to serve as president, secretary, treasurer, and director.

Utilizing LEC billing to collect for services has come under intense scrutiny over the past several years based on allegations that charges are placed on customers' monthly bills without their knowledge or consent.   Such unauthorized billing, known as cramming, has precipitated myriad changes in the industry.

In order to place charges on land-line telephone bills for its services, the Sann Companies contracted with billing aggregators such as Transaction Clearing.  Transaction Clearing worked with the phone companies (LECs) to facilitate the placing of charges on the monthly phone bills of the Sann Companies' customers.

Sann's pleas of guilty relate to misrepresentations he caused to be made to Transaction Clearing related to his and his companies' business relationships with Transaction Clearing.   Specifically, in March of 2010, Transaction Clearing defined what it considered a "cramming complaint."   The Sann Companies' contracts with Transaction Clearing required them to report complaints meeting that definition on a monthly basis.   The reporting obligation applied whether or not the complaint actually related to a customer being signed up for the service

4

without their consent or knowledge, or was justified.   If the complaints reached a certain threshold, the LECs and billing aggregators would require entities such as the Sann Companies to submit action plans in an effort to reduce the volume of complaints.   If complaints persisted, the LECs could suspend the Sann Companies and terminate the billing arrangement.

The contracts also required each Transaction client, including the Sann Companies, to disclose the names of other companies or entities owned or controlled by that client's officers or principals.   In order to continue to receive revenue for the Sann Companies from Transaction Clearing, Sann and his agents failed to accurately report complaints meeting Transaction Clearing's definition of cramming, and also failed to fully disclose Sann's interest in the Sann Companies.

As it relates specifically to Count XIII, an employee of Tri-Data Systems in Montana (Emerica's accounting firm), at the direction of Emerica in Montana, sent an email to Transaction Clearing in Texas on March 3, 2011, representing the Sann Companies had no complaints meeting Transaction Clearing's definition of cramming during February 2011.   In fact, the Sann Companies received approximately 479 complaints that met Transaction Clearing's definition of cramming during February 2011.   As it relates to Count XXXIV, Sann transferred $100,000 from a bank account to a Charles Schwab and Company investment account on April 4, 2011.   The money involved in that transfer was paid to the

Sann Companies in connection with funds received from utilizing LEC billing and therefore was derived from the wire fraud scheme described above.

The government submits that the aforementioned evidence would prove beyond a reasonable doubt all the elements of the crimes charged in Counts XIII and XXXIV of the Indictment.

Respectfully submitted this 27th day of March, 2015.

                                MICHAEL W. COTTER
                                United States Attorney


                                */s/ Timothy J. Racicot*
                                Assistant U.S. Attorney
                                Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2015, a copy of the foregoing document was served on the following persons by the following means:

(1,2)  CM/ECF
( )    Hand Delivery
( )    U.S. Mail
( )    Overnight Delivery Service
( )    Fax
( )    E-Mail


1.  Clerk, U.S. District Court

2.  Peter F. Lacny
    Datsopoulos, MacDonald and Lind, P.C.
    201 West Main Street, Suite 201
    Central Square Bldg.
    Missoula, MT 59802


　　　　　　　　　　　　　　　　　　　　*/s/ Timothy J. Racicot*
　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff